## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3V, INC., a Delaware Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 06-00593-JJF |
| | ) |
| v. | ) |
| | ) |
| CIBA SPECIALTY CHEMICALS | ) |
| CORPORATION, a Delaware Corporation, | ) |
| | ) |
| Defendant. | ) |
| ————————————————— | ) |
| | |
| CIBA SPECIALTY CHEMICALS | ) |
| CORPORATION, a Delaware Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 06-00672-JJF |
| v. | ) |
| | ) |
| 3V, INC., a Delaware Corporation, | ) |
| | ) |
| Defendant. | ) |
| ————————————————— | ) |
| | |
| CIBA SPECIALTY CHEMICALS | ) |
| CORPORATION, a Delaware Corporation, | ) |
| | ) |
| Cross-Plaintiff, | ) |
| | ) C.A. No. 06-00629-JJF |
| v. | ) |
| | ) |
| 3V, INC., a Delaware Corporation, | ) |
| | ) |
| Cross-Defendant. | ) |
| | ) |

## CIBA'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE OF COURT TO SERVE LIMITED DISCOVERY RELATING TO 3V'S DISCLAIMER OF ITS PATENT CLAIMS

Frederick L. Cottrell, III (#2555)
(cottrell@rlf.com)
Chad M. Shandler (#3796)
(shandler@rlf.com)
Richards Layton & Finger
One Rodney Square, 10th Floor
*Of Counsel:*                                        P.O. Box 551
Alan E.J. Branigan                                   Wilmington, DE 19899
Brion Heaney                                         (302) 651-7700
Richard J. Traverso                                  *Counsel for CIBA Specialty Chemicals*
Millen White Zelano & Branigan, P.C.                 *Corporation*
2200 Clarendon Boulevard
Suite 1400
Arlington, VA 22201
(703) 312-5305

Dated: April 16, 2008

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND.................................................................................... 1

ARGUMENT ......................................................................................................... 3

    A.   3V's Failure To Notify CIBA Of Its Intention To Disclaim Its
         Claims On Patents Caused CIBA To Incur Hundreds Of
         Thousands Of Dollars In Unnecessary Attorneys' Fees And
         Litigation Expenses.......................................................................... 3

    B.   3V's Failure To Comply With Its Discovery Obligations Provides
         Additional Evidence Of Its Intent To Disclaim. .................................. 4

    C.   Relevant Legal Authority.................................................................... 7

CONCLUSION ..................................................................................................... 9

# TABLE OF AUTHORITIES

## CASES

*Automated Bus. Cos. v. NEC Am., Inc.,*
202 F.3d 1353 (Fed. Cir. 2000)................................................................................7

*Callaway Golf Co. v. Slazenger,*
384 F. Supp. 2d 735 (D. Del. 2005)........................................................................7

*Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.,*
723 F.2d 1573 (Fed. Cir. 1983).............................................................................7

*Highway Equip. Co. v. FECO, Ltd.,*
469 F.3d 1027 (Fed. Cir. 2006)..............................................................................1

*Impax Labs., Inc. v. Aventis Pharm., Inc.,*
333 F. Supp. 2d 265 (D. Del. 2004), *aff'd in part, vacated in part,*
468 F.3d 1366 (Fed. Cir. 2006)..............................................................................7

*Mathis v. Spears,*
857 F.2d 749 (Fed. Cir. 1988)................................................................................7

*Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices, Inc.,*
No. 96-101-SLR, 1997 WL 811563 (D. Del. Dec. 23, 2997).................................1

*Microstrategy Inc. v. Crystal Decisions, Inc.,*
No. 03-1124-MPT, 2008 WL 782842 (D. Del. Mar. 25, 2008)..............................8

*Motorola, Inc. v. Interdigital Tech. Corp.,*
121 F.3d 1461 (Fed. Cir. 1997)..............................................................................8

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.,*
459 F.3d 1311 (Fed. Cir. 2006)...........................................................................7, 8

*Tenax Corp. v. Tensar, Corp.,*
No. H-89-424, 1991 WL 336921 (D. Md. Apr. 30, 1991)......................................7

## STATUTES

35 U.S.C. § 285...................................................................................................1, 7

## MISCELLANEOUS

7 Chisum on Patents § 20.03[4][c][v] (1999) ........................................................7

ii

## INTRODUCTION

CIBA Specialty Chemicals Corporation ("CIBA") believes it clear that 3V, Inc. ("3V") has planned for a long time, if not from the outset, to file its recent disclaimer and motion to dismiss.[1]   Nevertheless, in an effort to run up CIBA's litigation costs and for other strategic reasons, 3V failed to inform CIBA of its disclaimer until after CIBA spent, unnecessarily, hundreds of thousands of dollars in attorneys' fees and costs in connection with litigation that 3V had no intention of pursuing.

To demonstrate conclusively the timing of and motives behind 3V's ill-timed disclaimer, CIBA seeks leave of Court to issue limited and narrow discovery directed to 3V's decision to disclaim.   Should the Court allow CIBA to serve its modest discovery requests, and should 3V's discovery responses demonstrate that it engaged in litigation misconduct, this case should be declared "exceptional" pursuant to 35 U.S.C. § 285.   *See infra* at 9.   Moreover, should it be shown that 3V's intention to run up CIBA's litigation expenses existed at the outset, 3V could be deemed liable for abuse of process.

## FACTUAL BACKGROUND

Much of the background of this case is set forth in CIBA's Response in Opposition to 3V's Motion to Dismiss (06-00593-JJF, D.I. #36; 06-00629-JJF and 06-00672-JJF, D.I. #35), which is incorporated herein by reference.

---

[1] Even if 3V's disclaimer were to rid this Court of subject matter jurisdiction in all three cases (which it does not in light of Ciba's counterclaims), this Court would still retain jurisdiction over 3V for the purpose of addressing its abusive discovery tactics. *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006) (even if a court is deprived of Article III jurisdiction it does not deprive the district court of jurisdiction to determine sanctions); see also *Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices, Inc.*, No. 96-101-SLR, 1997 WL 811563 (D. Del. Dec. 23, 1997) (dismissal of action does not deprive court of jurisdiction to rule on an application for fees and costs).

Specific to the instant Motion, however, it appears clear that 3V intended for a long time, possibly including at the outset, to file and prosecute its appeal (Civil Action No. 06-00593-JJF) from an adverse decision of the U.S. Patent Office primarily to put its competitor (CIBA), to substantial litigation expense. In this respect, CIBA has expended well over $800,000 defending against 3V's Complaint -- a great portion of those expenses relating to electronic discovery; and, a large portion of those electronic discovery expenses having been incurred in only the last few weeks. *See* Declaration of Alan E.J. Branigan ("Branigan Dec.") at ¶¶ 3-4.[2]

In the above regard, as will be set forth in more detail shortly, 3V has been appearing to have been participating in long, drawn out settlement discussions while CIBA has been preparing for trial, but in view of recent events, it is clear that 3V has primarily been trying to cause CIBA to undergo as much expense as possible while 3V did essentially nothing substantive. *Id.* at ¶¶ 10-12.

At an August 9, 2007 meet-and-confer the parties agreed to meet certain discovery obligations including electronic discovery. *Id.* at ¶ 6. 3V, however, failed to meet its obligations and appears to have done essentially no electronic discovery. As time went on, and the initial electronic discovery cut-off date of March 28, 2008 approached, notwithstanding supposed settlement discussions, CIBA was forced to spend hundreds of thousands of dollars on its electronic discovery. *Id.* at ¶¶ 4, 7-8, 13. 3V, however, did virtually nothing at all.

On March 20, 2008, 3V's trial counsel filed in the U.S. Patent Office a formal disclaimer of all claims of its '573 patent in litigation. *Id.* at ¶¶ 8, 13. Notwithstanding 3V's contention (albeit erroneous) that the filing of its disclaimer should terminate all litigation before this Court, 3V failed to serve CIBA with a copy

---

[2] A true and correct copy of the Branigan Declaration is attached hereto at Exhibit 1.

2

of that disclaimer as required by the U.S. Patent Office. *Id.* at ¶ 9. The same 3V attorney did not so much as mention the filing of the secret disclaimer in subsequent communications with CIBA's counsel on March 21 - -*the very next day*. *Id.* at ¶ 11. Indeed, notwithstanding 3V's present contention that the filing of the disclaimer would terminate all proceedings in this Court, on March 21, 2008 -- the very day after the filing of it's "secret" disclaimer, the same attorney that caused the disclaimer to be filed the day before suggested that 3V was still considering a settlement offer by CIBA. *Id.*

## ARGUMENT

A.   **3V's Failure To Notify CIBA Of Its Intention To Disclaim Its Claims On Patents Caused CIBA To Incur Hundreds Of Thousands Of Dollars In Unnecessary Attorneys' Fees And Litigation Expenses.**

The only logical reason for 3V's failure to advise CIBA of 3V's disclaimer and position on dismissal was to cause CIBA additional discovery expenses which, by that time, were being incurred by a massive effort of eight attorneys, registered patent agents, and paralegals in reviewing 80,000 pages of electronic documents for relevance, privilege and confidentiality prior to producing them to 3V by the March 28, 2008 deadline. *Id.* at ¶ 13. All the while 3V did *nothing*.

Moreover, a logical inference could certainly be drawn that 3V didn't wake up on the morning on March 20, 2008 and decide it was going to disclaim the patent claims at the heart of the litigation initiated by 3V almost eighteen months earlier. If permitted to serve the discovery attached hereto, CIBA intends to demonstrate that 3V decided to file its disclaimer *before* it decided not to conduct electronic discovery and not to permit its witnesses to be deposed. This tactical decision literally cost CIBA, hundreds of thousands of dollars -- completely unnecessarily. *Id.* at ¶¶ 3-5, 13.

3

Based upon the foregoing CIBA should, at the very least, be entitled to conduct discovery as to when 3V decided to disclaim the heart of its action in this Court; why, except to run up its competitor's expenses, it failed to notify CIBA of that intent; and, why 3V apparently did no electronic discovery (among other ignored discovery obligations).

CIBA attaches three interrogatories and one document-production request that is seeks leave to serve on 3V - - the scheduled time for such discovery having now expired. *See* Exhibits 2 and 3 hereto. CIBA also requests that the time for response to those discovery requests be shortened to ten days; and, that subsequent depositions be permitted, if necessary.

**B.    3V's Failure To Comply With Its Discovery Obligations Provides Additional Evidence Of Its Intent To Disclaim.**

If 3V had been meeting its own obligations in preparation for trial, CIBA would have no objection, but that is clearly not the case. At the onset of the litigation, CIBA asked 3V to preserve its electronically-stored information ("ESI"). Early on in the litigation, however, CIBA became concerned that 3V was not preserving its ESI. This was particularly important to CIBA because 3V advised that 3V's inventor (Raspanti) had died so that paper documents might not be available.    Hence, in a letter dated May 16, 2007 (almost 11 months ago) CIBA requested the depositions of Messrs. Guido Cesani, Kevin Blakeley, and Luigi Radaelli in connection with ESI. Branigan Dec. at ¶ 14. After having done nothing in over nine months, on March 12, 2008, 3V's counsel promised immediately to look into arranging those depositions. *Id.* at ¶ 15. But, as in the past, nothing materialized after the better part of a month.

In correspondence of July 17, 2007, in view of 3V's sparse discovery responses, CIBA noted that electronic discovery and the depositions of Messrs. Cesani, Blakeley, and Radelli were important to CIBA so that CIBA could prepare its

4

case for trial. *Id.* at ¶ 15. As discussed below in the ensuing eight months, 3V has done nothing in these respects.

Based upon discussions at the August 10, 2007 meet-and-confer, CIBA expressed concern that 3V appeared to have, in fact, spoliated 3V's ESI. *Id.* at ¶ 16. As a result, 3V agreed to advise CIBA of the dates when 3V began to preserve ESI and when, if at all, 3V suspended automated deletion under 3V's retention policy. *Id.* After over seven months 3V has done nothing in this regard.

3V also agreed to give CIBA a keyword list to be used by CIBA in filtering CIBA's ESI for documents that would be most pertinent to 3V's key words for helping 3V meet its burden of proof. *Id.* at ¶ 16. Having heard nothing from 3V in over six months, CIBA advised 3V that CIBA could wait no longer for 3V's key work list. *Id.* at ¶ 17. 3V still did nothing so CIBA had its ESI filtered without 3V's list. *Id.* at ¶¶ 18-19. Hence, after 3V finally provided what 3V called an "initial list," CIBA had to have its vendor perform another entire new filtering of CIBA's ESI. *Id.* at ¶¶ 20-21.

The invention in litigation has sometimes been referred to as a combination of "HA88" manufactured by 3V and "Tinuvin 622," manufactured by CIBA. A significant aspect of Interference No.105262 and this litigation, therefore, related to 3V's application for a Chemical Abstract Service (CAS) registry number for "Uvasorb HA88." *Id.* at ¶ 22. When CIBA asked for production of those documents, 3V erroneously responded to the effect that no such documents existed. *Id.* At the August 9, 2007 meet-and-confer, CIBA challenged 3V's incredible response at least to the extent that 3V's CAS documents were available to 3V (but not CIBA) from the Chemical Abstract Service. *Id.* 3V then promised to provide those significant

5

documents. *Id.* To date, after almost eight months, CIBA has received nothing. *Id.* at ¶ 22. Similarly, CIBA has received absolutely no electronic discovery. *Id.* at ¶ 23.

CIBA noted in March 11, 2008 correspondence to 3V's counsel that CIBA's vendor had developed 40 gigabytes of ESI that had to be searched *again* against 3V's recently provided keyword lists for documents to be reviewed. *Id.* at ¶¶ 7, 13, 21. CIBA felt compelled to meet the March 28, 2008 deadline and moved ahead with such searching against 3V's keyword list. As a result, CIBA's vendor developed 80,000 pages that had to be reviewed and CIBA committed to 3V that it would provide at least five people to review those documents for production by March 28, 2008. *Id.* at ¶ 7.

As noted above, in the eight days after 3V filed its "secret" disclaimer," CIBA actually employed eight professionals to meet its electronic discovery obligations to assist 3V in meeting 3V's burden of proof -- all of it a waste in view of 3V's disclaimer of its need for meeting any burden of proof. *Id.* at ¶ 13. Only CIBA's burden of proof remains, but apparently 3V expects CIBA to meet that burden without the benefit of 3V's discovery documents.

In short, it is clear that for a *long* time, if not from the outset, 3V had no intention of preparing for trial, but merely stalled under the guise of settlement negotiations in an effort to maximize CIBA's expenses. It is also abundantly clear that 3V waited until the very last minute to file its dismissal motion in this Court so as to maximize its competitor CIBA's expenses.

C.    **Relevant Legal Authority.**

Pursuant to 35 U.S.C. § 285 the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.[3] Section 285 serves to remedy injustice to a party that has expended significant sums defending itself against unfounded claims of patent infringement, and to serve as a deterrent against the bringing of unwarranted suits for patent infringement. *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000); *Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988).

Conduct that may render a case "exceptional" includes "misconduct during litigation, vexatious or unjustified litigation, and frivolous suit." *Impax Labs., Inc. v. Aventis Pharm., Inc.*, 333 F. Supp. 2d 265, 284 (D. Del. 2004), *aff'd in part, vacated in part,* 468 F.3d 1366 (Fed. Cir. 2006) (citation omitted). When an alleged infringer seeks to recover attorneys' fees under Section 285, the Federal Circuit has found that an exceptional case may exist where there is litigation misconduct or the litigation is brought in subjective bad faith and is objectively baseless. *See Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1322 (Fed. Cir. 2006). Any of these factors alone may merit the court determining that a case is "exceptional."

Here, 3V's assertion and subsequent abandonment of its claims on the patents at issue, under the threat of discovery, suggest that this case may be "exceptional"

---

[3] 3V disclaimed its patent rights on March 20, 2008 and in its March 27, 2008 brief acknowledged that it had no rights in the patents at issue. (D.I. 34). Ciba is thus the prevailing party. *See Tenax Corp. v. Tensar, Corp.*, No. H-89-424, 1991 WL 336921, at *1266 (D. Md. Apr. 30, 1991) ("a party has prevailed within the meaning of Section 285, if, after discovery, a claim is dismissed with prejudice.") (internal citations omitted); *see also Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 746 (D. Del. 2005) (holding that a defendant who has obtained from a claimant a voluntary dismissal with prejudice can be classified as a "prevailing party"); 7 Chisum on Patents § 20.03[4][c][v] (1999).

7

under Section 285. In determining whether a plaintiff undertook or continued the litigation in bad faith, the court will consider decisions during the litigation process (such as restraining orders, preliminary injunction, dismissal of other claims) that indicate that the plaintiff's claims were reasonable or showed a sign of success. *Serio-US Indus.*, 459 F.3d at 1320-1322. The limited discovery sought by CIBA will require 3V to produce information that will show whether or the litigation was justified or brought in bad faith.

Moreover, the timing and circumstances surrounding 3V's disclaimer of its patent claims suggest that 3V engaged in litigation misconduct by not promptly informing CIBA of its decision to disclaim.[4] 3V's strategic decision not to inform CIBA of its disclaimer until the filing of its March 27, 2008 brief caused CIBA to incur, unnecessarily, thousands of dollars in additional attorneys' fees and litigation expenses. We believe that the limited discovery sought by CIBA will demonstrate conclusively that 3V knew for weeks, if not months, prior to March 27 that it intended to disclaim. Should this be the case, CIBA will file an application for fees with the Court pursuant to Section 285.[5]

---

[4] See *Microstrategy Inc. v. Crystal Decisions, Inc.*, No. 03-1124-MPT, 2008 WL 782842, at \*\*5-6 (D. Del. Mar. 25, 2008) (holding that timing of plaintiff's "reassessment of the claims calls into question its motives" and supported an award of fees and expenses).

[5] A case maybe "exceptional" under Section 285 based upon a party's litigation misconduct. *See Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed. Cir. 1997).

8

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, CIBA respectfully requests that the Court enter an Order in the form attached to the Motion GRANTING CIBA's Motion for Leave of Court to Serve Limited Discovery Relating to 3V's Decision to Disclaim Its Patent Claims.

Frederick L. Cottrell, III (#2555)
(cottrell@rlf.com)
Chad M. Shandler (#3796)
(shandler@rlf.com)
Richards Layton & Finger
One Rodney Square, 10th Floor
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Counsel for CIBA Specialty Chemicals Corporation*

*Of Counsel:*
Alan E.J. Branigan
Brion Heaney
Richard J. Traverso
Millen White Zelano & Branigan, P.C.
2200 Clarendon Boulevard
Suite 1400
Arlington, VA 22201
(703) 312-5305

Dated: April 16, 2008

9

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2008, I electronically filed the foregoing with the Clerk

of Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### BY HAND

Joseph Grey
Stevens & Lee
1105 North Market Street
7th Floor
Wilmington, DE 19801

I hereby certify that on April 16, 2008, I sent the foregoing document by Federal Express,

to the following non-registered participants:

Angelica M. Colwell
Nexsen Pruet, LLC
205 King Street, Suite 400
Charleston, SC 29401

Sara Centioni Kanos
201 W. McBee Avenue, Suite 400
Greenville, SC 29601

Chad M. Shandler (#3796)
shander@rlf.com

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 00593-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-672-JJF |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Cross-Plaintiff, | ) | |
| | ) | C.A. No. 06-00629-JJF |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Cross-Defendant. | ) | |
| | ) | |

## DECLARATION OF ALAN E.J. BRANIGAN

Alan E.J. Branigan declares and states as follows:

1.    I am trial counsel for CIBA Specialty Chemicals Corporation ("CIBA") in the captioned cases and have been involved in all three cases from the outset.

2.      I am a member in good standing of the Virginia Bar (among others); am admitted to practice in the United States District Court for the Eastern District of Virginia which is my home district;  have been admitted to practice in various other U.S. District Courts; United States Courts of Appeals; and, the United States Supreme Court. I am admitted to practice *pro hoc vice* in this case.

3.      Upon information and belief, CIBA, through March 31, 2008, has expended $818,137.13 in attorney fees; costs, and vendor expenses.

4.      My firm's fees and expenses to CIBA from February 2, 2008 through March 31, 2008, almost exclusively for discovery matters in the captioned cases, were $213,724.03.   Additional expenses, presently undetermined, were incurred by CIBA's electronic discovery vendor (Kroll-On-Track); local counsel; and, John T. Miller, Esq. who conducted settlement negotiations with 3V on behalf of CIBA.

5.      Between March 20, 2008 and March 28, 2008 CIBA expended $44,472.25 at just my firm alone in professional fees for meeting the March 28, 2008 deadline for completing CIBA's electronic discovery.   Additional, presently undetermined charges were incurred by Kroll-on-Track

6.      On August 9, 2007 the parties had a meet-and-confer and agreed to meet certain discovery obligations including electronic discovery.  Exhibit A herewith is a non-letterhead copy of my memorandum of that meet and confer mailed to trial counsel for 3V who never questioned me on any of the matters set forth in that memorandum.

7.      As early as March 11, 2008 (see Exhibit B) CIBA advised 3V's trial counsel that CIBA was incurring hundred of thousands of dollars in electronic discovery expenses and that CIBA's trial counsel had five people working on the

2

production of electronic discovery documents for 3V. In fact, on the very next day (March 12, 2008) CIBA produced roughly 13,000 pages of documents to 3V -- many of them containing confidential subject matter.

8. On the morning of March 20, 2008, 3V's trial counsel filed a disclaimer of all claims of 3V's U.S. patent 5,658,973 (the "973 patent") which was 3V's patent in the U.S. Patent Office Interference to which this case relates.

9. 3V's trial counsel did not serve CIBA with a copy of the Disclaimer.

10. 3V's disclaimer of its '973 patent claims meant it no longer had a burden of proof in the captioned cases. Hence, there was no point in CIBA continuing its electronic discovery efforts to provide documents to 3V. If 3V had advised CIBA of 3V's intent to disclaim its '973 patent claims, therefore, there would have been no need for CIBA to expend all of the funds required to complete electronic discovery for 3V's benefit.

11. On March 21, 2008, (Exhibit C) the day after 3V filed its disclaimer, the same attorney that filed the disclaimer (3V's trial counsel) wrote that CIBA's latest settlement offer was being passed on to 3V, but said nothing about the disclaimer filed the day before.

12. Similarly, on March 26, 2008 the same 3V attorney advised (Exhibit D) to the effect that settlement negotiations were through, but again failed to mention the prior filing of the disclaimer of the claims of the '973 patent.

13. By March 20, 2008, the date 3V secretly filed its disclaimer in the U.S. Patent Office my firm was making a massive effort by eight attorneys, registered patent agents, and paralegals to review over 80,000 pages of electronic

3

documents for relevance, privilege, and confidentiality prior to producing them to 3V by the March 28, 2008 deadline.

14.    In a letter dated May 16, 2007 (Exhibit E) CIBA requested depositions of Messers. Guido Cesani, Kevin Blakely, Luigi Radaelli in connection with 3V's electronically stored information (ESI).

15.    On July 17, 2007, (Exhibit F) after 3V's present trial counsel took over the litigation on behalf of 3V, I emailed 3V's new trial counsel of the importance of electronic discovery in this case and the follow-up depositions.  On March 12, 2008 after being reminded again about CIBA's request to depose Messers. Guido Cesani, Kevin Blakely and Luigi Radaelli, 3V's trial counsel advised that their availability would be "immediately" looked into, but CIBA was never advised further on the matter.

16.    At the August 9, 2007 meet-and-confer CIBA expressed concern that 3V might have spoliated it's ESI (see Exhibit A).  As a result, 3V agreed to advise CIBA of the dates when 3V began to preserve ESI and when, if at all, 3V suspended automated deletion policies.  3V never provided that promised information. That same document notes 3V's agreement to give CIBA a keyword list to be used by CIBA in filtering CIBA's ESI.

17.    After not having heard anything from 3V about its key-word list in almost 6 months, in the beginning of February 2008 it became necessary for CIBA to further its electronic discovery efforts.  Hence, it authorized Kroll-on-Track to work on previously preserved hard drives and the like to develop a filterable, searchable data base of CIBA's relevant ESI.

4

18.    On March 3, 2008 CIBA could wait no longer for 3V's key word list and authorized Kroll-on-Track to use only CIBA's keyword list to filter CIBA's ESI.

19.    Upon being advised that the filtering operation resulted in over one million pages of documents, on March 7, 2008 a narrowing filtering operation was authorized.

20.    On March 10th 2008, seven months after it was promised, and only 18 days before electronic discovery had to be completed, CIBA finally received a 3V key-word list (by regular mail) described by 3V's counsel as "an initial list."

21.    In my March 11, 2008 email (Exhibit B) CIBA advised 3V that a separate, costly filtering operation against 3V's key-word list would be required. On March 13, 2008 CIBA authorized Kroll-on-Track to conduct that filtering operation. Kroll-on-Track's fees for conducting that additional filtering operation were $5400. The resulting electronic documents were made available for review by CIBA's trial team on March 20, 2008 - - the very day that 3V filed its secret Disclaimer. It was the results of that filtering operation that resulted in the review efforts referred to in paragraph 13 above.

22.    The invention of this litigation has sometimes been referred to as a combination of "HA88" manufactured by 3V and "Tinuvin 622" manufactured by CIBA. A significant aspect of Interference No. 105,262 and this litigation, therefore, related to 3V's application for a Chemical Abstract Service (CAS) registry number for "Uvasorb HA88." When CIBA asked for production of those documents 3V responded that no such documents existed. At the August 9, 2007 meet and confer (Exhibit A), therefore, CIBA challenged 3V's response and asked that if 3V really did not have the documents 3V (but not CIBA) could obtain them from the Chemical

5

Abstract Service.  As noted in paragraph 6 of page 2 of Exhibit A, 3V agreed to provide those documents.  To date, however, CIBA has not provided those significant documents.

23.    CIBA has never received any electronic discovery from 3V.

24.    Being aware that willful false statements in the like so made are punishable by fine or imprisonment, or both under 18 U.S.C. §1001, I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true.

Alan E. J. Branigan

Dated:  April _14_, 2008

# EXHIBIT A

August 10, 2007

Sara Centioni Kanos, Esq.
Nexsen Pruet
201 W. McBee Ave.
Ste 400
Greenville, SC 29603-0648

           RE:    08-09-07 Meet-and-Confer

Dear Sara:

      This is to memorialize the agreements we reached yesterday morning at our meet-and-confer.

      We advised that CIBA has preserved all relevant backup tapes; relevant individual personal computer data; relevant LAN data and instrument or lab data. You were not sure of the extent to which 3V has preserved corresponding electronically-stored information (ESI) and agreed to advise us of the dates when 3V began to preserve ESI and when, if at all, 3V suspended automated deletion or retention policies.

      Both parties will use a date filter of January 1, 1995-to-present in reviewing ESI.

      We have a key word list we will exchange with you as soon as we receive yours and, you will prepare Italian key words after we have exchanged our key word lists. In this respect, after speaking with you we reviewed our key word list with our ESI vendor and determined that we can probably shorten our list (and the expenses to both parties). Rich Traverso will do that, but he is presently out of the office. He will do it upon his return on the 13th.

      Deduplication will be handled by the parties at the custodial level. That is, if John Doe's files have five copies of the **identical** email only one will be produced, but if both John Doe and Mary Doe have the identical email in their files, both will be produced. (As you noted, a string precludes an otherwise-produced email from being "identical.")

      Except as noted below, all documents will be produced in TIFF format and will include all associated metadata and extracted text.

Sara Centioni Kanos, Esq.
August 10, 2007
Page 2

Spreadsheets and PowerPoint presentations over about 3 megabytes do not TIFF well. These should also be provided as TIFF images with Metadata and extracted text as above, but with an additional link to the native file. Databases such as Access, SQL, Oracle and proprietary databases will be searched for relevant data using the key words, and any reports generated by the search will be included in the document review process and produced as described above.

Kevin Blakely and David Canfield will confer on a specification sheet for the specific electronic load files that will be provided by each party to the other.

A privileged document log will, of course, be provided by the parties for each ESI document for which privilege is claimed.

We will check to see if relevant documents you have requested from CIBA are in German; and, if so, we will advise you and work something out so that you obtain all of the documents to which you are entitled.

In addition to the ESI matters we also had a meet and confer of other outstanding discovery. We advised that we were going to move for an Order that any of your answers to our Requests for Admissions that were neither admitted nor denied would be conclusively admitted. You agreed to review your responses to our Requests for Admissions promptly with a view toward updating responses which were neither admitted nor denied.

Concerning CIBA's document requests 11a-f relating to 3V's application for a Chemical Abstract Service Registry Number for UVASORB HA88 - - you agreed to provide those documents.

Concerning our May 17, 2007 letter to Ray Stewart about 3V's response to CIBA interrogatories 1-6, 9, 10, 19, and 22-28 et al. - -to meet our meet -and-confer obligations you will advise use in writing of your position on those matters so that we can prepare a motion on those things, if any, that you are not willing to provide.

We have three bank boxes of paper documents we have identified in response to 3V's document requests. Many of them are privileged, but we have not yet identified specific such documents in our privileged document log. We have also sent some of the documents back to CIBA for clarification. To avoid duplication and review time for all concerned we had thought to produce those documents at the same time as CIBA's electronic documents. You have strongly requested, however, that we produce identified paper documents as soon as possible - we will do that.

I believe our meet and confer yesterday was fruitful notwithstanding its having been by telephone.

Sara Centioni Kanos, Esq.
August 10, 2007
Page 3


     Hopefully, the above sets forth matters we agreed to yesterday.  If you believe there are additional matters of agreement, please let us know.

                                Very truly yours,


                                Millen White Zelano & Branigan, P.C.


                                Alan E. J. Branigan


AEB/jqs
K:\CIBA\2l\08-09-07 meet and confer letter V2.doc

# EXHIBIT B

# MILLEN, WHITE, ZELANO & BRANIGAN, P.C.

LAW OFFICES

2200 CLARENDON BOULEVARD
SUITE 1400
ARLINGTON, VIRGINIA 22201

PHONE: 703/243-6333
TELECOPIER: 703/243-6410
E-MAIL: MAIL@MWZB.COM

I. WILLIAM MILLEN
JOHN L. WHITE
ANTHONY J. ZELANO
JOHN R. MOSES
HARRY B. SHUBIN
BRION P. HEANEY
RICHARD J. TRAVERSO
ALAN E. J. BRANIGAN

JOHN A. SOPP
JEFFREY R. COHEN
JEFFREY A. SMITH[1]
CSABA HENTER[1]
SCOTT J. MAJOR
MICHAEL S. CULVER
ADAM D. MANDELL
JENNIFER J. BRANIGAN[2]
SAGUN KC[3]

March 11, 2008

NEXSEN PRUET LLC
Attorneys and Counselors at Law
Attn: Angelica M. Colwell
205 King Street
Suite 400
Charleston, SC  29402

Dear Angelica:

This is in response to your March 6th letter which we received yesterday.

Firstly, please give our best wishes to Sara, her baby and her husband. As the father of eight, I look upon births as life-altering events.

We have been looking for your key-word list since our meet-and-confer in August of 2007. As indicated in our Jan 22 2008 letter, we could wait no longer and had our vendor run searches on our list so that we could get the resulting documents reviewed and produced by 3/28. Our vendor came up with 104 gigabytes of data which we were subsequently able to reduce to 40 gigabytes. The cost of this venture to Ciba, has been well into the hundreds of thousands of dollars. Just the electronic searches alone are $2,700 per gigabyte. If we are now separately to run 3V's key words we fully expect the court to order 3V to pay for that second round of searching.

Your letter that we received yesterday says you were enclosing a privileged document log, but no such attachment was received. In this respect, note that your privileged document log should have been produced way back when the Stewart firm was handling the case for 3V; and, that we asked for it at our meet-and-confer in August.

We have been working for many weeks on electronic discovery and expect to produce it by March 28th. We have five or our people working on it. We expect, of course, that 3V's electronic discovery will be completed at the same time. If not, we will move the court for a default, costs and attorney fees.

As noted during our August meet and confer, we are also going to move the Court for an order that our Requests for Admissions that were neither admitted nor denied nor properly objected to be conclusively admitted.

[1] MEMBER OF BAR OTHER THAN VA    [2] PATENT AGENT    [3] TECHNICAL ADVISOR

March 11, 2008
Page 2

At our meet and confer you also agreed to advise us of 3V's efforts to prevent spoliation of its ESI; the dates when 3V began to preserve ESI; and, when it suspended any automated deletion or retention policies. We have never received that information.

Just today we were advised that about three inches of additional CIBA paper documents have been located in response to 3V's document requests. They are being shipped to us where they will reviewed and either produced or placed on our Privileged Document log.

On May 16th, 2007 we asked to begin arrangements to depose Messrs Guido Cesani; Kevin Blakely; and Radaelli Luigi - - particularly relating to electronic discovery. We don't think those arrangements can be put off any longer. Insofar as we are aware 3V has never indicated a desire to depose any of Ciba's personnel.

We don't understand your reference to Ciba's key work list as being a moot point and your suggestion that electronic discovery might not be necessary. Electronic discovery is absolutely necessary; and, it would seen to us that Ciba's attached list is **vital** to 3V's electronic discovery efforts. Inasmuch as Ciba's electronic discovery has resulted in many, many more documents than its paper discovery, we expect that 3V's electronic discovery will do the same.

Concerning settlement, we are advised that Ciba expended quite some effort to prepare an agreement memorializing points to which the parties were thought to have agreed in principle, but that after substantial delays, 3V advised to the effect that it was no longer agreeable to much of anything. It does not appear to us, therefore, that a settlement is in the offing. Hence, we are proceeding as though that were the case.

Millen, White, Zelano & Branigan
Counsel for Ciba

By_____
Alan E.J. Branigan

# EXHIBIT C

**From:** Colwell, Angelica M. [mailto:AColwell@nexsenpruet.com]
**Sent:** Friday, March 21, 2008 10:11 AM
**To:** john.t.miller@att.net
**Cc:** Villamizar Joann LE US
**Subject:** Re: Settlement Proposal

John,

As I already indicated 3V has informed me that they have no interest in a settlement which requires this large an up front payment and royalty payments on top of that for third party activities. I will, however, pass this along and let you know 3V's reaction.

Lica

CONFIDENTIAL COMMUNICATION: The information contained in this message may contain legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this transmission is strictly prohibited. If you have received this communication in error, please notify us by telephone or email immediately and return the original message to us or destroy all printed and electronic copies. Nothing in this transmission is intended to be an electronic signature nor to constitute an agreement of any kind under applicable law unless otherwise expressly indicated.

IRS CIRCULAR 230 NOTICE: Any federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending any transaction or matter addressed in this communication.

Exhibit D

**From:** Colwell, Angelica M. [mailto:AColwell@nexsenpruet.com]
**Sent:** Wednesday, March 26, 2008 2:32 PM
**To:** john.t.miller@att.net
**Cc:** Villamizar Joann LE US
**Subject:** RE: Settlement Proposal

John,

3V has reviewed the proposal. They are not willing to settle on the terms CIBA has proposed. I was not given a counter proposal or any authority to negotiate further.

Lica

**Angelica M. Colwell**
Registered Patent Attorney
Nexsen Pruet, LLC
205 King Street, Suite 400
P.O. Box 486 (29402)
Charleston, SC 29401
Direct Dial: 843.720.1769
T: 843.577.9440, F: 843.414.8201
acolwell@nexsenpruet.com
*www.nexsenpruet.com*

Exhibit E

# MILLEN, WHITE, ZELANO & BRANIGAN, P.C.
### LAW OFFICES
### 2200 CLARENDON BOULEVARD
### SUITE 1400
### ARLINGTON, VIRGINIA 22201

I. WILLIAM MILLEN
JOHN L. WHITE
ANTHONY J. ZELANO
JOHN R. MOSES
HARRY B. SHUBIN
BRION P. HEANEY
RICHARD J. TRAVERSO
ALAN E. J. BRANIGAN
JOHN A. SOPP

PHONE: 703/243-6333
TELECOPIER: 703/243-6410
E-MAIL: MAIL@MWZB.COM

JEFFREY R. COHEN
JEFFREY A. SMITH
CSABA HENTER
SCOTT J MAJOR
DANIEL E. FISHER
MICHAEL S. CULVER
ADAM D. MANDELL
JENNIFER J. BRANIGAN
SAGUN KC

May 16, 2007

Ray Stewart, Esq.
Birch, Stewart, Kolasch & Birch, LLP
8110 Gatehouse Road
Suite 100 East
Falls Church, VA 22042-1248

RE:  Depositions of Messrs Guido Cesani; Kevin Blakely and Radaelli Luigi

Dear Ray:

We would like to depose the referenced individuals at our offices concerning E-discovery.  We will be particularly interested in the electronic documents of and relating to Guiseppe Raspanti because we can no longer depose him.

We would like to schedule the requested depositions for shortly after we receive adequate responses to our Discovery requests.

Millen, White, Zelano & Branigan

By_____
Alan E. J. Branigan

Exhibit F

## Alan Branigan

**From:** Alan Branigan
**Sent:** Tuesday, July 17, 2007 11:46 AM
**To:** 'Centioni, Sara A.'
**Cc:** 'John Miller'
**Subject:** RE: meet and confer for 3V vs. Ciba discovery

Sara:

   This is to follow up on our telcon this morning and confirm a meet and confer date of Thursday August 2nd in our offices.

   It is because 3V's discovery responses have been so sparse that the need for electronic discovery and follow-up depos have become so important. Even if the Court grants your request for a discovery extension we must get moving to prepare our case for trial.

   We also need to get your privileged document list. 3V has made many claims of privilege and, if, as I gather, you are through with paper-document production, your privileged document list is past due.

   I realize, of course, that you are under pressure to get up to speed on the case and we are willing to work with you on that. You advised this morning, however, to the effect that you will be busy with other matters for the next two weeks; and, I'm not sure the court will find that to be acceptable.

   We look forward to seeing you on August 2nd and please let us know if there is anything we can do to assist you in getting up to speed.

                               Al Branigan

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2008, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

**BY HAND**

Joseph Grey
Stevens & Lee
1105 North Market Street
7th Floor
Wilmington, DE  19801

I hereby certify that on April 16, 2008, I sent the foregoing document by Federal Express, to the following non-registered participants:

Angelica M. Colwell                    Sara Centioni Kanos
Nexsen Pruet, LLC                      201 W. McBee Avenue, Suite 400
205 King Street, Suite 400             Greenville, SC  29601
Charleston, SC  29401

Chad M. Shandler (#3796)
shander@rlf.com

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3V, INC., a Delaware Corporation, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )    C.A. No.06-00593-JJF |
| | ) |
| CIBA SPECIALTY CHEMICALS | ) |
| CORPORATION, a Delaware Corporation, | ) |
| Defendants. | ) |
| | ) |
| | ) |
| CIBA SPECIALTY CHEMICALS | ) |
| CORPORATION, a Delaware Corporation, | ) |
| | ) |
| Plaintiff | ) |
| | )    C.A. No.06-00629-JJF |
| v. | ) |
| | ) |
| 3V, INC., a Delaware Corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| CIBA SPECIALTY CHEMICALS | ) |
| CORPORATION, a Delaware Corporation, | ) |
| | ) |
| Plaintiff | ) |
| | )    C.A. No.06-00672-JJF |
| v. | ) |
| | ) |
| 3V, INC., a Delaware Corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CIBA SPECIALTY CHEMICALS CORPORATION'S
## SECOND INTERROGATORIES DIRECTED TO 3V, INC.

Ciba Specialty Chemicals Corporation (hereinafter, "CIBA"), through its undersigned

counsel, pursuant to Federal Rules of Civil Procedure 26 and 33, hereby propounds the following

interrogatory to 3V, Inc. (hereinafter, "3V") to be answered under oath and in writing by one of

its officers within ten (10) days of service hereof and served upon Alan E.J. Branigan at Suite 1400, 2200 Clarendon Boulevard, Arlington, Virginia 22201.

## DEFINITIONS:

The definitions used in CIBA's First Set of Interrogatories to 3V are applicable to Interrogatories 29 through 31 set forth below.

## INTERROGATORY 29:

Identify the date on which 3V first considered the filing of its Disclaimer of the claims of USP 5,658,973.

## INTERROGATORY 30:

Identify the date on which 3V decided to file its Disclaimer of the claims of USP 5,658,973.

## INTERROGATORY 30:

State the complete basis and identify all reasons for 3V's decision to file its Disclaimer of the claims of USP 5,658,973.

_____
Frederick L. Cottrell, III (#2555)
(Cottrell@rlf.com)
Chad M. Shandler (#3796)
(Shandler@rlf.com)
Richards, Layton & Finger
One Rodney Square, 10th Floor
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Counsel for CIBA Specialty Chemicals Corporation*

*Of Counsel:*
Alan E. J. Branigan
Brion Heaney
Richard J. Traverso
Millen White Zelano & Branigan, P.C.
2200 Clarendon Blvd.
Suite 1400
Arlington, VA 22201
(703) 312-5305

Date: April 16, 2008

2

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 06-00593-JJF |
| | ) | |
| CIBA SPECIALTY CHEMICALS CORPORATION, a Delaware Corporation, Defendants. | ) ) ) | |
| | ) | |
| | ) | |
| | ) | |
| CIBA SPECIALTY CHEMICALS CORPORATION, a Delaware Corporation, | ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | C.A. No. 06-00629-JJF |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| CIBA SPECIALTY CHEMICALS CORPORATION, a Delaware Corporation, | ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | C.A. No.06-00672-JJF |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CIBA'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS DIRECTED TO 3V, INC.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Ciba Specialty

Chemicals Corp (hereinafter, "Ciba"), through its undersigned counsel, requests 3V, Inc.

(hereinafter "3V") to produce the documents specified below, within ten (10) days of service, to Millen, White, Zelano and Branigan, Suite 1400 Clarendon Blvd., Arlington, Virginia 22201 or at such other time and place, or in such other manner, as may be mutually agreed upon by the parties.  3V's production of documents should be in accordance with the Instructions and Definitions set forth in CIBA's First Requests for Production and Fed.R.Civ.P. 34.

## DOCUMENT REQUEST

12.    All documents relating to 3V's decision to file its Disclaimer of the claims of U.S. Patent 5,658,973.

Frederick L. Cottrell, III (#2555)
(Cottrell@rlf.com)
Chad M. Shandler (#3796)
(Shandler@rlf.com)
Richards, Layton & Finger
One Rodney Square, 10th Floor
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Counsel for CIBA Specialty Chemicals Corporation*

*Of Counsel:*
Alan E. J. Branigan
Brion Heaney
Richard J. Traverso
Millen White Zelano & Branigan, P.C.
2200 Clarendon Blvd.
Suite 1400
Arlington, VA  22201
(703) 312-5305

Dated:  April 16, 2008

2