**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-00593-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-00672-JJF |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Cross-Plaintiff, | ) | |
| | ) | C.A. No. 06-00629-JJF |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Cross-Defendant. | ) | |
| | ) | |

**CIBA'S REPLY TO 3V'S ANSWERING BRIEF
IN OPPOSITION TO CIBA'S MOTION
FOR LEAVE TO SERVE LIMITED DISCOVERY**

Frederick L. Cottrell, III (#2555)
(Cottrell@rlf.com)
*Of Counsel:*                     Chad M. Shandler (#3796)
Alan E.J. Branigan               (Shandler@rlf.com)
Brion Heaney                     Richards Layton & Finger, P.A.
Richard J. Traverso             One Rodney Square
Millen White Zelano & Branigan, P.C.   P.O. Box 551
2200 Clarendon Boulevard        Wilmington, DE  19899
Suite 1400                      (302) 651-7700
Arlington, VA  22201            *Counsel for CIBA Specialty Chemicals*
(703) 312-5305                  *Corporation*

Dated:  May 15, 2008

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...........................................................................................................1

ARGUMENT...................................................................................................................1

CONCLUSION................................................................................................................10

RLF1-3283343-1

# TABLE OF AUTHORITIES

**PAGE**

Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co.,
    No. 502003CA005045XXOCAI, 2005 WL 679071 (Fla. Cir. Ct. Mar. 1, 2005)..... 6

Highway Equip. Co. v. FECO, Ltd.,
    469 F.3d 1027 (Fed. Cir. 2006) ................................................................................ 4

Mathis v. Spears,
    857 F.2d 749 (Fed. Cir. 1988) .................................................................................. 3

*Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices, Inc.,*
    No. 96-101-SLR, 1997 WL 811563 (D. Del. Dec. 23, 1997) .................................... 4

*Microstrategy Inc. v. Crystal Decisions, Inc.,*
    No. 03-1124-MPT, 2008 WL 782842 (D. Del. Mar. 25, 2008) ................................. 8

Tenax Corp v. Tensar Corp.,
    No. H-89-424, 1991 WL 336921 (D. Md. Apr. 30, 1991) ......................................... 9

# OTHER AUTHORITIES

37 C.F.R. § 41.106 .......................................................................................................... 3

35 U.S.C. § 285 ............................................................................................................... 8

35 U.S.C. § 291 ............................................................................................................ 8, 9

ii

## INTRODUCTION

3V's answering brief is comprised largely of irrelevant arguments having nothing to do with what clearly appears to have been 3V's efforts to run up CIBA's litigation expenses while doing apparently *nothing* to meet its own electronic discovery obligations.  CIBA responds to each of these arguments below.

## ARGUMENT

CIBA acknowledges that paper discovery was delayed because of the long and protracted, albeit futile, settlement discussions.   There is absolutely no indication by 3V, however, that those delays in any way inconvenienced 3V.  Indeed, it appears that 3V did not even look at the documents CIBA did produce.  A 10-page, March 3rd letter (Exhibit A hereto) accompanied a disk with more than 17,000 pages of responsive documents.  That lengthy letter set forth the correlation between the produced documents and 3V's requests for production.  In footnote 1 of 3V's Answering Brief, however, 3V complains that CIBA's document production had no indication of that correlation.  3V spent so little time on CIBA's production that the bulk of the production was not even noticed.

The gist of CIBA's Motion for Limited Discovery is that 3V appears to have done none of its required electronic discovery, because 3V planned for quite some time to file a disclaimer of its patent claims and then try to have this Court dismiss all three cases.  All that while knowing that CIBA was expending substantial sums conducting costly discovery of CIBA's own ESI to assist 3V in meeting 3V's burden of proof, which 3V had no intention of meeting.[1]

---

[1] See paragraph 7 of Branigan affidavit accompanying CIBA's opening brief and Exhibit B attached thereto.  On March 11, 2008 3V was advised, "We have been working for many weeks on electronic discovery and expect to produce it by March 28, 2008.  We have five of our people working on it."

3V claims that CIBA's proposed discovery is all covered by work product or attorney-client privilege. 3V is simply wrong. 3V is not being asked for its counsel's advice. CIBA is simply asking *when* 3V first considered the filing of its disclaimer and *when* 3V in fact decided to file its disclaimer and the reasons for filing the disclaimer. One of those reasons might be that it was filed upon the advice of counsel, and 3V might *then* claim privilege as to that advice. 3V may well have had other reasons (*e.g.*, it didn't want to spend money), and those reasons would not be subject to a claim of privilege. CIBA also asks for documents relating to 3V's disclaimer decision; some of those may be subject to a claim of privilege, but those documents must nevertheless be identified along with any other documents (*e.g.*, budget figures showing various cost-of-litigation projections) that may or may not be subject to a claim of privilege.

It is self-defeating for 3V to argue that the timing of its decision to file was privileged. 3V's answering brief states (at the bottom of page 1) that "the disclaimer was not filed until it became obvious to 3V that acceptable settlement terms were not likely to be reached." If that is a privileged statement, the privilege has been waived. 3V can't have it both ways.

3V did produce almost 2,759 pages of paper documents. Of those, 2,229 were part of "The Record" in the U.S. Patent Office interference, which the parties had previously stipulated to include in the record in this Court. Others were patent copies. 3V produced *no* documents of its inventor, Raspanti. Accordingly, inasmuch as 3V advised that Mr. Raspanti is now deceased, great importance is placed upon 3V's ESI relating to Mr. Raspanti's efforts.

3V argues that its disclaimer was not "secret" because CIBA's settlement counsel was allegedly informed that 3V had "looked into a disclaimer" as a way to end the litigation if a settlement could not be reached. 3V gives no indication, however, as to the extent or nature of such a disclaimer. Were it patent claims to be disclaimed, or was it something else? If it was the

2

claims, which claims were they to be? One, two or more, or all of them? What was the extent of the dismissal that 3V "might" ask for? 3V has not answered any of these legitimate questions.

Moreover, the "secrecy" of the disclaimer relates to 3V's actual filing of such a document without telling CIBA, all the while knowing that CIBA was making great efforts to comply with 3V's requests for electronic discovery.[2]

3V argues that it had no obligation to serve its notice of the disclaimer. The Patent Office files of 3V's '973 patent and CIBA's application in interference still reside in the Patent Office Board of Appeals and Interferences as an adversary proceeding; 37 C.F.R. § 41.106(e)(1) states:

> Papers filed with the Board, if not previously served, must be served simultaneously on every opposing party except as the Board expressly directs.

Moreover, inasmuch as 3V is now attempting to use that disclaimer as a basis for having all three pending cases dismissed in this Court, it seems almost incomprehensible that 3V would not have served that document upon opposing counsel in this Court in order to conserve both attorney time and this Court's time.

3V argues at page 5 that CIBA's proposed discovery is improper because it is not relevant to any parties' claims or defenses. CIBA's answers to 3V's Complaint and CIBA's Cross-Complaint, however, specifically ask for "judgment ordering any further relief as may be equitable and/or appropriate." Moreover, as noted by the Federal Circuit in *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988):

> [W]hen confronted with litigation brought in bad faith, a court's exercise of its inherent power to rectify, at least in part, the injustice done the defendant serves additionally to defend the court and the judicial process against abuse.

Id. at 754.

---

[2] At least $44,472.25 was spent between the filing of the disclaimer and 3V's notice to CIBA. *See* paragraph 5 of the Branigan declaration in CIBA's opening brief.

Still further, even if this Court were to dismiss all three cases, that dismissal would not deprive the Court of jurisdiction to rule on an application for fees and costs.[3]

CIBA agrees that it would make sense to stay further discovery on the patent issues until after this Court's ruling on 3V's Motion to Dismiss.[4]  Hence, CIBA will not discuss the many cases cited by 3V for that proposition.  Inasmuch as this Court will retain its inherent jurisdiction to rule on an application for fees and costs, however, there is no reason for this Court to stay discovery on those issues.

At page 7 of its brief, 3V states:

> CIBA's dissatisfaction with the filing of the disclaimer is puzzling.
> The logical thought would be that CIBA would view the
> disclaimer, which would remove the interfering patent as a
> hindrance to its application, as favorable.

CIBA *does* regard the disclaimer as favorable insofar as 3V is no longer able to assert the *claims* of its '973 patent.  3V's disclaimer, however, *absolutely does not* remove the '973 patent as a hindrance to CIBA's pending application.  It remains as a reference against CIBA's claims 16 - 27 until such time as this Court rules that claims 16 - 27 are patentable to CIBA.

For some reason, at pages 8 and 9, 3V discusses the parties settlement negotiations while at the same time saying they are superfluous.  They *are* superfluous and will not be further discussed.

What is *not* superfluous is that *after* 3V filed its disclaimer there were *two* settlement communications between the parties, but 3V's counsel never so much as *mentioned* the filing of

---

[3] *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006) and *Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices, Inc.*, No. 96-101-SLR, 1997 WL 811563 (D. Del. Dec. 23, 1997).

[4] CIBA disagrees with the notion that CIBA's counterclaim and cross-claim should be dismissed. 3V can disclaim its own claims, but not those of CIBA. CIBA should not be deprived of its right of appeal from issues having essentially nothing to do with whether 3V wants to disclaim the claims of its patent. 3V's claims are one thing; CIBA's claims are another.

4

its disclaimer even though 3V now asserts that the filing of its disclaimer was based upon the viability of settlement and dispositive of these three cases. CIBA points to those two post-disclaimer settlement communications, not for their substance, but as evidence of 3V's intent to maintain its disclaimer in secrecy while knowing that CIBA was spending large sums in meeting 3V's discovery requests. If 3V had no interest in CIBA's discovery responses, 3V should have advised CIBA of that fact as soon as it became apparent to 3V. 3V should not have maintained it in secrecy.

At page 9 of its brief, 3V argues that CIBA's discovery was for purposes other than 3V's appeal. As set forth in Exhibit A herewith, CIBA's paper and electronic discovery were in response to 3V's discovery requests and no others.

3V also argues to the effect that CIBA wasted money by hiring a vendor to conduct electronic discovery. Even most large corporations do not have the tools or processes to adequately to conduct electronic discovery without causing spoliation of the very documents that are being sought. If, for example, Microsoft "Outlook" is used to search an email database, each keyword would have to be input individually as a separate search and *attachments would not be searched at all.* Local area networks (LANs), personal data assistants and zip files would not be searched. No non-Microsoft documents can be searched with an Outlook search. Moreover, printing a document from such a search changes the document's metadata.[5] *The document has been spoliated.* To prevent such spoliation, a mirror image must be preserved and usually, at least for CIBA, that requires a vendor.

---

[5] At the August 9, 2007 meet-and-confer, the parties agreed that "all documents will be produced in TIFF format and will include all associated metadata and extracted text." *See* paragraph 6 and attached Exhibit A attached to the Branigan declaration filed with CIBA's opening brief.

Similarly, document review, document categorization (*e.g.*, the degree of confidentiality), privilege logs and the like become far too time-consuming and expensive if one of the vendor document-review processes is not used. The use of a vendor document-review process *saves* money.

Moreover, in-house ESI discovery is dangerous. Sanctions for spoliation of ESI can be draconian.[6] Hence, this law firm is loath to suggest that its client conduct its own e-discovery.

At page 10, 3V argues that CIBA has not before objected to the cost of discovery. Discovery, particularly electronic discovery, is expensive. Except for that fact, CIBA had no reason to object until it became clear that 3V was requiring CIBA to conduct expensive electronic discovery in which 3V was no longer interested.

CIBA does *not* contend that 3V ignored "*all*" discovery obligations in this case. 3V did produce several thousand pages of documents.[7] Again, CIBA's complaint is that 3V apparently did *no* electronic discovery while CIBA was spending large sums gathering ESI documents for 3V, even after 3V had no interest in receiving those documents. In this respect, 3V does not deny that it conducted essentially no electronic discovery, which this Court's ordered to be completed by March 28, 2008.

Concerning 3V's failure to assist in the arrangement of depositions for Messrs. Cesani, Blakely and Radaelli, 3V argues that upwards to a year after CIBA's requests, 3V was trying to "fully flesh out if sound legal principles existed for 3V to object to the depositions of Messrs. Cesani and Radaelli." Assuming that is a viable excuse, no such excuse exists for Mr. Blakely.

---

[6] *See Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co.,* No. 502003CA005045XXOCAI, 2005 WL 679071 (Fla. Cir. Ct. Mar. 1, 2005) (counsel was replaced and $850 million in punitive damages were awarded).

[7] Which, as noted above, were mostly patent copies and copies of the Patent Office record.

6

In this respect, 3V argues that because CIBA did not object to 3V's responses to interrogatories about 3V's preservation of ESI, the issue should be closed. It is precisely because CIBA was not satisfied with 3V's responses, however, that CIBA sought to depose Messrs. Cesani, Radelli and Blakely, who were identified by 3V as being responsible for 3V's ESI. As to Messrs Cesani and Radaelli, does 3V really contend that CIBA can't depose the persons that 3V says are responsible for its ESI?

CIBA agrees that a moving party carries the burden in an attempt to establish entitlement to attorney fees and therefore will not discuss the cases cited by 3V for that proposition. This, however, is precisely the reason CIBA seeks limited discovery on the issue of when it was that 3V decided to disclaim.

The evidence of 3V's intention to disclaim and seek dismissal is that 3V appears to have done essentially none of the electronic discovery that is so vital to CIBA's case in view of the lack of paper documents in the now-deceased inventor Raspanti's files. Surely if 3V had intended to take the cases to trial, it would have expected severe sanctions for not having conducted that required discovery. It is reasonable to conclude, therefore, that 3V intended for a *long time* to let CIBA continue to spend large sums on electronic discovery even though 3V knew it would be for no useful purpose. Moreover, the fact that 3V maintained its disclaimer in secrecy while knowing that CIBA was making a substantial effort to meet the March 29, 2008 discovery deadline is evidence of 3V's bad faith. Finally, on this point, 3V's reluctance to assist in arranging for at least Mr. Blakely's deposition is evidence that 3V did not want CIBA to find out about 3V's lack of electronic discovery and possible spoliation.

It is the above-noted evidence of bad faith, albeit not yet conclusive, that gives rise to CIBA's need for limited discovery.

7

CIBA cites *Microstrategy* for the proposition that the timing of a party's actions can give rise to a holding of bad faith. *See Microstrategy Inc. v. Crystal Decisions, Inc.*, No. 03-1124-MPT, 2008 WL 782842, at **5-6 (D. Del. Mar. 25, 2008). In *Microstrategy*, the plaintiff did not abandon 16 of its 33 asserted claims until two days before its response for a motion of summary judgment was due. In the instant case, 3V did not file its disclaimer until eight days before electronic discovery was due, and then maintained the secrecy of its disclaimer until after CIBA had expended more than an additional $44,000. Other facts of *Microstrategy* are quite different from the instant case, but *Microstrategy* does stand for the proposition that the timing of a party's actions can be evidence of bad faith that is sanctionable under 35 U.S.C. § 285.

At page 17, 3V accuses CIBA of bad faith for having filed not only an answer to 3V's appeal, but also a crossclaim and an action under 35 U.S.C. § 291. All three cases include the issue of priority of invention between 3V's Raspanti and CIBA's Gugumus.[8] Except for procedural differences, the counterclaim and crossclaim do not add one iota to the burdens upon the parties. The third case is filed under 35 U.S.C. § 291 and is an interference between 3V's issued '973 patent and CIBA's issued U.S. Patent No. 6,380,286. The issue in that case is also priority of invention between 3V's inventor Raspanti and CIBA's inventor Gugumus,wherein CIBA sought to have the claims of 3V's '973 patent declared invalid in view of the prior invention of Gugumus.

CIBA could not have included the Section 291 action in 3V's appeal because CIBA's '286 patent was not (and could not have been) a part of the Patent Office proceedings from

---

[8] This issue of priority of inventorship should not be confused with the additional issue in the counterclaim and cross-claim of whether CIBA's claims 16 - 27 are patentable to CIBA's Gugumus.

which 3V appealed.  CIBA therefore filed its cross-appeal and Section 291 action pursuant to Rule 18 of the Federal Rules of Civil Procedure relating to joinder of claims and remedies.

If 3V had a genuine objection to the joinder of these three cases, it should have voiced it at the outset without waiting until this late date and accusing CIBA of bad faith.  One can only imagine the furor that would have arisen if CIBA had waited until the conclusion of the instant case to file its patent-to-patent interference under 35 U.S.C. § 291.  It would have been an absolute waste of judicial effort to have tried priority of invention a second time.

Finally, at pages 17 and 18 of its brief, 3V disagrees with CIBA's conclusion that CIBA is the prevailing party on the issue of priority of invention.  That is exactly what the Patent Office has already ruled.  3V has disclaimed *all of its* claims in issue.  This Court will certainly not reverse the Patent Office decision on priority of invention.  CIBA has, *in fact*, prevailed on the issue of priority of invention.  3V's efforts to distinguish the *Tennax* case[9] on grounds that *Tennax* had more discovery than the instant case is an argument that CIBA is unable to understand and therefore will not further discuss.

---

[9] *Tenax Corp v. Tensar Corp.*, No. H-89-424, 1991 WL 336921 (D. Md. Apr. 30, 1991).

9

## CONCLUSION

For the foregoing reasons, CIBA respectfully submits that 3V's arguments are without

merit and that CIBA's motion for limited discovery should be granted.


_____

Frederick L. Cottrell, III (#2555)
(Cottrell@rlf.com)
Chad M. Shandler (#3796)
(Shandler@rlf.com)
Richards Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Counsel for CIBA Specialty Chemicals*
*Corporation*

*Of Counsel:*
Alan E.J. Branigan
Brion Heaney
Richard J. Traverso
Millen White Zelano & Branigan, P.C.
2200 Clarendon Boulevard
Suite 1400
Arlington, VA  22201
(703) 312-5305

Dated:  May 15, 2008

10

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2008, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

**BY HAND**

Joseph Grey
Stevens & Lee
1105 North Market Street
7th Floor
Wilmington, DE 19801

I hereby certify that on May 15, 2008, I sent the foregoing document by Federal Express, to the following non-registered participants:

Angelica M. Colwell
Nexsen Pruet, LLC
205 King Street, Suite 400
Charleston, SC 29401

Sara Centioni Kanos
201 W. McBee Avenue, Suite 400
Greenville, SC 29601

Chad M. Shandler (#3796)
shander@rlf.com

# EXHIBIT A

# MILLEN, WHITE, ZELANO & BRANIGAN, P.C.
### LAW OFFICES
2200 CLARENDON BOULEVARD
SUITE 1400
ARLINGTON, VIRGINIA 22201

I. WILLIAM MILLEN
JOHN L. WHITE
ANTHONY J. ZELANO
JOHN R. MOSES
HARRY B. SHUBIN
BRION P. HEANEY
RICHARD J. TRAVERSO
ALAN E. J. BRANIGAN

PHONE: 703/243-6333
TELECOPIER: 703/243-6410
E-MAIL: MAIL@MWZB.COM

JOHN A. SOPP
JEFFREY R. COHEN
JEFFREY A. SMITH[1]
CSABA HENTER[1]
SCOTT J. MAJOR
MICHAEL S. CULVER
ADAM D. MANDELL
JENNIFER J. BRANIGAN[2]
SAGUN KC[3]

March 3, 2008

Sara Centioni Kanos, Esq.
Nexsen Pruet
201 W. McBee Avenue
Suite 400
Greenville, SC 29603-0648

Re: 3V, Inc. V. CIBA Specialty Chemicals Corporation

Dear Sara:

As to 3V Inc's Request for production of Documents , please be advised of the following responses of CIBA Specialty Chemicals Corporation, copies of responsive documents of which are on the enclosed disc:

**Request No.1.**     All documents with reference to written policies, procedures and guidelines related to CIBA's computers, computer *systems,* electronic data and electronic media including, but not limited to, the following:

a.     Backup tape rotation schedules; **No known documents.**

b.     Electronic data retention, preservation and destruction schedules; **No known documents.**

c.     Employee-use policies of company computers, data, and other technology; **No known documents.**

d.     File naming conventions and standards; **No known documents.**

e.     Password, encryption and other security protocols; **No known documents.**

f.     Diskette, CD, DVD, and other removable media labeling standards; **No known documents.**

[1]MEMBER OF BAR OTHER THAN VA   [2]PATENT AGENT   [3]TECHNICAL ADVISOR

Sara Centioni Kanos, Esq.
March 3, 2008
Page 2 of 10

     g.     Email storage conventions (i.e., limitations on mailbox sizes/storage locations, schedule and logs for storage, etc); **No known documents.**

     h.     Electronic media deployment, allocation and maintenance procedures for new employees, current employees or departed employees; **See Disk, Bates Nos. C014737-C014782.**

     i.     Software and hardware upgrades (including patches) from January 1991 until the present including who and what organization conducted such upgrades, **No known documents.** and

     j.     Personal or home computer usage for work-related activities. **No known documents.**

     **Request No.2.**     Organization charts for all Information Technology or Information Services departments or divisions from January 23,1995 until present. **No known documents.**

     **Request No.3.**     Backup tapes containing email and other electronic data related to this action from January 23, 1995 until the present. **No responsive documents thus far.**

     **Request No.4.**     Exact copies (i.e., bit-by-bit mirror image copies) of all hard drives on the desktop computers, laptop computers, notebook computers, personal digital assistant computers, servers, and other electronic media related to this action from January 23, 1995 to present. **No responsive documents thus far.**

     **Request No.5.**     Exact copies of all relevant disks, CDs, DVDs and other removable media related to the subject matter of this litigation from January 23, 1995 to present. **No responsive documents thus far.**

     **Request No.6.**     For each interrogatory set forth in 3V's First Set of Interrogatories, produce all documents which CIBA identified, referred to, relied upon, consulted or used in any

Sara Centioni Kanos, Esq.
March 3, 2008
Page 3 of 10

way in answering such interrogatory. **See disk for documents provided in response to all other requests for production with Bates numbers within the range of C001011 to C017291, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list."**

**Request No.7.**     All documents that contain or otherwise relate to the facts or information that CIBA contend refute, in anyway, any of 3V's allegations in the captioned actions. **See disk for documents provided in response to all other requests for production with Bates numbers within the range of C001011 to C017291, including C012699-C013023, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list."**

**Request No.8.**     All reports, including drafts, submitted by any expert witness retained or consulted by CIBA with respect to the issues raised in this litigation. **No responsive documents.**

**Request No.9.**     All documents that contain or otherwise relate to the facts or information that CIBA contend supports, in any way, any of its allegations in the captioned actions. **See disk, Bates Nos. C003361-C006299, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

**Request No. 10.**     All documents in the possession of François Gugumus relating to the subject matter of this litigation. **See disk, Bates Nos. C007558-C007600 and C013109-C013285, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

Sara Centioni Kanos, Esq.
March 3, 2008
Page 4 of 10

**Request No.11.**    All documents in the possession of James P. Galbo relating to the subject matter of this litigation. **See disk, Bates Nos. C006300-C006313 some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

**Request No. 12.**    All documents in the possession of Huani Tong relating to the subject matter of this litigation. **See disk, Bates Nos. C006614-C007317 some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list."**

**Request No. 13.**    All documents relating to investigations and review by CIBA of research performed by Dr. Massimo Quintini, research performed by Dr. Giorgio Zanchi, or other research performed at 3V relating to the subject matter of this litigation. **See disk, Bates Nos. C007318-C007357, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list."**

**Request No. 14.**    All documents relating to the sale of products by CIBA which contain two or more stabilizers for stabilizing polymeric material against degradation. **No responsive documents.**

**Request No. 15.**    All documents relating to the research, filing, prosecution, maintenance, licensing, sale, infringement, abandonment or opposition of the inventions disclosed and claimed in the following patents and applications and any divisionals or continuations thereof:

US Patent No 4477615

US Patent No 5658973.

**See disk, Bates Nos. C007358-C007446 and C014783- C017291 some of which have been**

Sara Centioni Kanos, Esq.
March 3, 2008
Page 5 of 10

redacted as privileged. Those redacted as privileged are identified on the accompanying
"Privileged list.".

      **Request No. 16.**     All documents relating to the research, filing, prosecution,
maintenance, licensing, sale, infringement, abandonment or opposition of the inventions
disclosed and claimed in the following patents and applications and any divisionals or
continuations thereof:

          US Patent No. 4108829
          US Patent No. 4086204
          US Patent No. 4331586
          US Patent No. 4857595.

**See disk, Bates Nos. C007447-C007448, some of which have been redacted as privileged.
Those redacted as privileged are identified on the accompanying "Privileged list."**

      **Request No. 17.**     All documents relating to the research, filing, prosecution,
maintenance, licensing, sale, infringement, abandonment or opposition of the inventions
disclosed and claimed in the following patents and applications and any divisionals or
continuations thereof:

          US Patent No. 4233412
          US Patent No. 6380286
          US Application No. 08/507,197
          US Application No. 081588,164
          US Application No. 08/858,191
          EP Application No. 95-08100422.

Sara Centioni Kanos, Esq.
March 3, 2008
Page 6 of 10

See disk, Bates Nos. C007449- 7600, C013024-13108, and C013296-C014736 some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".

    **Request No. 17.**    All documents relating to Interference No. *105,262* with the exception of documents that have been submitted to the PTO. See disk, Bates Nos. C001011-C00360, C007449- 7600, C013024-13108, and C013296-C014736 some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".

    **Request No. 18.**    All documents relating to analyses of compounds, within or outside the scope of the count, performed by or for CIBA with respect to Interference No. 105,262 by 13CNMR, 1HNMR, FTIR, HPLC, TLC and Gel Permeation Chromatography tests. See disk, Bates Nos. C007601-C010791, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list."

    **Request No. 19.**    All documents relating to the strategy, preparation and submission of the declaration of James P. Galbo (Exhibit 2014 of Interference No. 105,262), including, but not limited to:

    a.    All documents which identify equipment used for the synthesis performed as described in Exhibit 2014 of Interference No. 105,262. See disk, Bates Nos. C010792-C012027 some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".

    b.    All documents which identify any trial performed for the synthesis performed, as described in Exhibit 2014 of Interference No. 105,262. See disk, Bates Nos. C010792-C012027, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".

Sara Centioni Kanos, Esq.
March 3, 2008
Page 7 of 10

     c.      All documents which identify any trial conducted to perform the synthesis, as described in Exhibit 2014 of Interference No. 105,262 that are not discussed in the declaration of Dr. James P. Galbo. **See disk, Bates Nos. C010792-C012027, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

     d.      All documents which identify a standard deviation for the results obtained for the synthesis, as described in Exhibit 2014 of Interference No. 105,262. **See disk, Bates Nos. C010792-C012027, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

     e.      All documents which indicate reaction parameters, such as the temperature at which the reaction products were dissolved, pressures employed, and the types of solvents employed, for any trial for the synthesis as described in Exhibit 2014 of Interference No. 105,262. **See disk, Bates Nos. C010792-C012027, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

     f.      All documents which indicate reaction parameters such as the temperatures and pressures and the types of solvents employed, for any purification procedure (e.g., filtration) for any trial for the synthesis as described in Exhibit 2014 of Interference No.105,262. **See disk, Bates Nos. C010792-C012027, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

     g.      All documents which describe any solvent used in any attempt to dissolve the samples referred to as "Galbo A2" and "Galbo B2" for all experiments performed for the synthesis, as described in Exhibit 2014 of Interference No.105,262. **See disk, Bates Nos. C010792-C012027, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

     h.      All documents which describe any of the above for any synthesis performed by or for CIBA not mentioned in Exhibit 2014 of Interference No. 105,262. **See disk, Bates Nos.**

Sara Centioni Kanos, Esq.
March 3, 2008
Page 8 of 10

C010792-C012027, some of which have been redacted as privileged. Those redacted as
privileged are identified on the accompanying "Privileged list.".

Request No. 20.    All documents relating to the strategy, preparation and submission
of the declaration of Huayi Tong (Exhibit 2015 of Interference No. 105,262), including, but not
limited to:

a.    All documents which describe results of IH-NMR on any product obtained from
any trial for the synthesis as described in Exhibit 2014 of Interference No. 105,262. See disk,
Bates Nos. C006300-C006313 and C012028-C012308, some of which have been redacted as
privileged. Those redacted as privileged are identified on the accompanying "Privileged
list.".

b.    All documents which describe results of C13 NMR on any product obtained from
any trial for the synthesis as described in Exhibit 2014 of Interference No. 105,262. See disk,
Bates Nos. C006300-C006313 and C012028-C012308, some of which have been redacted as
privileged. Those redacted as privileged are identified on the accompanying "Privileged
list.".

c.    All documents which describe results of Gel permeation chromatography on any
product obtained from any trial for the synthesis as described in Exhibit 2014 of Interference No.
105,262. See disk, Bates Nos. C006300-C006313, C012028-C012105 and C012309-C012664,
some of which have been redacted as privileged. Those redacted as privileged are identified
on the accompanying "Privileged list.".

d.    All documents which describe results of HPLC on any product obtained from any
trial for the synthesis as described in Exhibit 2014 of Interference No.105,262. See disk, Bates
Nos. C006300-C006313 and C012028-C012105, some of which have been redacted as

Sara Centioni Kanos, Esq.
March 3, 2008
Page 9 of 10

privileged. **Those redacted as privileged are identified on the accompanying "Privileged list.".**

e.     All documents which describe any other form of analysis conducted with respect to any product obtained from any trial for the synthesis as described In Exhibit 2014 of Interference No. 105,262. **See disk, Bates Nos. C006300-C006313, C012028-C012105 and C012309-C012670, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

f.     All documents which describe whether and if so, how, melting point ranges were determined for any product obtained from any trial for the synthesis as described in Exhibit 2014 of Interference No. 105,262. **See disk, Bates Nos. C006300-C006313 and C012028-C012105, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

**Request No. 21.**     All documents relating to the strategy, preparation, and submission of the declaration of Huayi Tong (Exhibit 2016 of Interference No. 105,262), including but not limited to drafts, whether in paper form or electronic form, of versions of the declaration of Exhibit 2016 that were generated prior to generation of the final version thereof; including any annotations or suggestions made on or with respect to said draft versions of the declaration of Exhibit 2016. **See disk, Bates Nos. , C006300-C006313, C010806-C012027 and C012106-C012698, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

**Request No. 22.**     All documents relating to the preparation of "component e)" according to the process disclosed at page 29, lines 40-57 of EP 0723 990 A1 ("CIBA process" (An English translation thereof appears in the left-hand column on page 19 of US 2002/0120042

Sara Centioni Kanos, Esq.
March 3, 2008
Page 10 of 10

A1 with reference to "component e)". This Request includes but is not limited to all process parameters, yields of product and identity of product(s), including molecular formula(s), relating to the "CIBA process." **See disk, Bates Nos. C006300-C007317 and C007601-C012105, some of which have been redacted as privileged. Those redacted as privileged are identified on the accompanying "Privileged list.".**

The documents redacted as privileged are identified on the accompanying list. The abbreviation "AWP/TP" which appears in the list is for "Attorney Work Product/Thought Process." Request numbers 3, 4 and 5 pertain to electronic discovery which is still being conducted.

Very truly yours,

MILLEN, WHITE, ZELANO & BRANIGAN, P.C.

_____
Richard J. Traverso

*RJT/jmj*